IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RODRICK LACEY (#51607), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3-06-0441 |
| | § | |
| GALVESTON COUNTY SHERIFF'S | § | |
| DEPARTMENT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The plaintiff, Rodrick Lacey (#51607), has filed a civil rights complaint under 42 U.S.C. § 1983, alleging that a deputy employed by the Galveston County Sheriff's Department used excessive force against him at the Galveston County Jail. Lacey proceeds *pro se* and he has been granted leave to proceed *in forma pauperis*. The defendant in this case, Galveston County Sheriff's Deputy Timothy Krietemeyer, has filed a motion for summary judgment, arguing that Lacey is not entitled to relief. (Doc. # 31). Lacey has filed a cross-motion for summary judgment in response and he requests a judgment in his favor. (Docs. # 37, # 38). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court **grants** the defendant's motion and **dismisses** this case for reasons that follow.[1]

---

[1] On October 25, 2007, this case was reassigned pursuant to General Order No. 2007-10 to United States District Judge Melinda Harmon. This case is being handled by the undersigned by agreement of the judges.

I.    **BACKGROUND**

Lacey is currently incarcerated in the Galveston County Jail awaiting trial on charges of burglary of a habitation.  Lacey reports that he was arrested and booked into the Jail on May 6, 2006.  The incident in question concerns an encounter between Lacey and Deputy Krietemeyer that occurred at the Jail on June 16, 2006, while Lacey was in custody as a pretrial detainee.

On June 16, 2006, Lacey alleges that he was down the hall from his cell getting a change of clothes when a "fellow inmate" began yelling "something real important" at him. Lacey contends that, while returning to his cell, he stopped to hear what the inmate had to say, but that the deputy in charge (Deputy Krietemeyer) told him to "hurry up" and get back to his assigned cell.  Lacey told the shouting inmate that he "had to go" and that he would "talk to [him] later."  At that moment, Deputy Krietemeyer allegedly grabbed Lacey by his "upper shirt" and by the "back of [his] pants" and dragged him into his cell.  Lacey claims that Deputy Krietemeyer "slam[med]" him against the metal bars.  After Lacey fell to the floor, Deputy Krietemeyer picked him up by the shirt and pants.  When other inmates began yelling, Deputy Krietemeyer reportedly "threw [Lacey] down, more or less, [slamming] [him] down onto the hard concrete."  Lacey complains that, as a result of this incident, he aggravated a pre-existing rib injury and suffered bruises as well as a scrape on his wrist.

Lacey does not dispute that Deputy Krietemeyer ordered him to return to his cell several times and that he did not promptly obey.  Lacey complains, nevertheless, that the force used to remove him to his cell was excessive.  Deputy Krietemeyer has filed a motion

2

for summary judgment, asserting qualified immunity and arguing that Lacey cannot demonstrate a constitutional violation or show that his conduct was objectively unreasonable.[2]  The parties' contentions are discussed below under the applicable standard of review.

## II.  <u>STANDARD OF REVIEW</u>

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be

---

[2]     The Galveston County Sheriff's Department was dismissed from this case on March 20, 2007, for lack of legal capacity to be sued.  (Doc. # 13).  Accordingly, Deputy Krietemeyer is the only remaining defendant.

granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

4

lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The defendant has filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law.  Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*,

504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro*

6

*se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

## III.   DISCUSSION — QUALIFIED IMMUNITY

Lacey alleges that Deputy Krietemeyer used excessive force against him on June 16, 2006, by assaulting him unnecessarily.  Deputy Krietemeyer argues that Lacey has failed to establish a constitutional violation and that, even assuming that such a violation occurred, he is entitled to qualified immunity from Lacey's claims against him.  Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions."  *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)).  "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004), *cert. denied*, 547 U.S. 1055 (2006).  The threshold question has two parts.  The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right.  *Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If, and only if, the court finds a

7

violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201).  If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).  An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*.  The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendant's contention that the plaintiff's excessive-force claim lacks merit.  Accordingly, the Court first addresses whether Lacey has raised a genuine issue of material fact on whether Deputy Krietemeyer committed a constitutional violation under the standard that applies to excessive-force claims by pretrial detainees.

8

### A.      Excessive Force — Pretrial Detainees

The Fifth Circuit has recognized that a pretrial detainee's excessive-force claim, although technically grounded in the Fourteenth Amendment, is properly analyzed under Eighth Amendment standards.  *See Petta v. Rivera*, 143 F.3d 895, 912 (5th Cir. 1998) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir.), *cert. denied* 509 U.S. 905 (1993)).  Not every malevolent touch by a prison guard gives rise to a constitutional violation under the applicable standard.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  In that respect, the constitution excludes from recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation and quotation omitted).

To prevail on an excessive-force claim, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result.  *See Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing *Hudson*, 503 U.S. at 7; and *Jackson v. Culbertson*, 984 F.2d 699 (5th Cir. 1993)); *see also Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (referencing 42 U.S.C. § 1997e(e), which precludes a civil action by a "prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury" in connection with an excessive-force claim).  Relevant factors to consider in evaluating an excessive-force claim include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably

perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

Deputy Krietemeyer contends that Lacey fails to establish a valid claim because he does not demonstrate that force was used improperly for malicious purposes, rather than in a good faith effort to maintain order. Deputy Krietemeyer contends further that Lacey fails to establish a constitutional violation because he cannot show that he suffered the requisite physical injury as a result of the encounter at issue. Each contention is discussed separately below.

### 1.      No Improper Use of Force

Deputy Krietemeyer argues that Lacey fails to demonstrate a constitutional violation because he does not show that the force used was maliciously applied for the purpose of causing harm, rather than in an effort to maintain order. In particular, Deputy Krietemeyer contends that minimal force was used in compliance with Jail policy to return Lacey to his pod after he refused repeated orders.

Deputy Krietemeyer has provided an affidavit in which he explains that he was supervising Lacey and other inmates as they received a change of clothes or "greens," referencing the green-colored garb worn by Jail detainees. (Doc. # 36, Exhibit 1, Affidavit of Timothy Krietemeyer). After he received his greens, Lacey did not return to his assigned pod with the other inmates. (*Id.*). Instead, Lacey stopped in the hallway where another inmate began to yell at Lacey. (*Id.*). Lacey began to yell back. (*Id.*). Deputy Krietemeyer

10

notes that, at the time of this incident, Lacey was in segregated confinement. (*Id.*). Records show that Lacey had been "re-housed" for his safety on May 11, 2006, after he was in a fight with several other inmates. (Doc. # 36, Exhibit 2, Inmate Re-House Form). It is against Jail policy for inmates in segregated confinement to exchange information with other inmates. (Doc. # 36, Exhibit 1, Affidavit of Timothy Krietemeyer). Deputy Krietemeyer explains that this policy is designed to help maintain jail security and to ensure the safety of the inmates. (*Id.*).

Deputy Krietemeyer reports that he ordered Lacey to stop talking to the other inmate and return to his cell. (*Id.*). Lacey ignored him. (*Id.*). Deputy Krietemeyer repeated his command, and Lacey continued to ignore him. (*Id.*). When Deputy Krietemeyer approached, Lacey allegedly turned and, in a threatening manner, essentially dared Deputy Krietemeyer to lay a hand on him. (*Id.*). Once it was clear that Lacey was not going to comply with his verbal commands, Deputy Krietemeyer "grabbed him by the back of his shirt and the back of his pants at the waist and pushed him back to the tank." (*Id.*). Deputy Krietemeyer reports that Lacey tripped when they got to the tank, perhaps over the threshold of the door, and fell to the ground. (*Id.*). Deputy Krietemeyer then pulled Lacey to his feet, put him in the tank, and shut the door. (*Id.*).

In support of his affidavit, Deputy Krietemeyer has presented a diagram of the area, showing the location of the incident. (Doc. # 36, Exhibit 1, Attachment to Timothy Krietemeyer's Affidavit). The record also contains an incident report, which details the altercation. (Doc. # 36, Exhibit 2, Inmate Incident Report). The incident report is consistent

with the affidavit supplied by Deputy Krietemeyer.  (*Id.*).  The incident report shows further that Lacey was examined by a nurse, who observed only minimal, "superficial" injuries. (*Id.*).

The incident report also includes a statement from Deputy Robert Wood, who witnessed the incident.  (*Id.*).  Deputy Wood stated that he saw Lacey communicating with an inmate from another pod.  (*Id.*).  Deputy Wood observed that Lacey paid no attention to Deputy Krietemeyer's repeated orders to return to his pod as he continued to converse with the other inmate.  (*Id.*).  Deputy Wood, who was handing out clean clothing, turned to move the basket of linens down the hall when he heard Lacey yell at Deputy Krietemeyer.  (*Id.*). When Deputy Wood turned the corner, he saw that Lacey had been "placed on the ground," but that the problem was quickly resolved without further incident.  (*Id.*).

Deputy Krietemeyer also presents an affidavit from Captain Joseph Gregory, who is Division Commander of the Corrections Division of the Galveston County Sheriff's Office. (Doc. # 36, Exhibit 2, Affidavit of Joseph Gregory).  Captain Gregory states that Deputy Krietemeyer's efforts to halt communication from one pod to another pod was proper.  (*Id.*). Captain Gregory explains that it is necessary to ensure that no communication is made between pods to prevent the inmates from being able to schedule an uprising or disturbance, which would in turn pose a risk of injury either to staff or other inmates in the institution. (*Id.*).  Because Lacey failed to obey several commands to stop talking to the inmate in another pod, Captain Gregory contends that it was "necessary" for Deputy Krietemeyer to physically remove Lacey to his pod.  (*Id.*).

This record demonstrates that force was needed to address Lacey's failure to obey repeated orders.  The record further shows that the force employed was limited to the purpose of enforcing discipline and compliance with Jail policy, rather than maliciously or sadistically employed in bad faith.  Significantly, Lacey admits in his complaint that he stopped in the hallway to communicate with an inmate from another pod who was trying to tell him "something real important." (*Complaint,* Doc. # 1, at 4).  Lacey further concedes in his complaint that he ignored or refused to obey Deputy Krietemeyer's orders to return to his pod.  (*Id.*).  As discussed further below, Lacey fails to show that he suffered more than minimal injuries as a result of the use of force.  It follows that Lacey fails to show that force was used improperly to cause harm, rather than for the purpose of maintaining order and discipline.  Because Lacey does not demonstrate that force was maliciously or sadistically applied in bad faith, he fails to establish a constitutional violation on Deputy Krietemeyer's part.

### 2.    Physical Injury

Deputy Krietemeyer argues further that Lacey fails to establish a constitutional violation in this instance because he does not show that he suffered a cognizable injury.  The Fifth Circuit has emphasized that "some physical injury" is an indispensable element of an excessive-force claim.  *Gomez*, 163 F.3d at 923.  The Fifth Circuit has explained further that the prisoner "must have suffered from the excessive force a more than *de minimis* physical injury," adding that "there is no categorical requirement that the physical injury be significant, serious, or more than minor."  *Id.* at 924.  However defined, it is clear that some

13

physical injury is required.  As another court in this circuit has concluded, a "physical injury" in this context "is an observable or diagnosable medical condition requiring treatment by a medical care professional."  *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).  In that regard, a more than *de minimis* "physical injury" is not a sore muscle, aching back, scratch, abrasion, or bruise of the type that would not otherwise force a "free world person" to seek medical treatment.  *See id.*; *see also Siglar*, 112 F.3d at 193 (concluding that a sore, bruised ear lasting for three days was *de minimis* and insufficient to support a claim for excessive force).      In this case, Lacey complains that his altercation with Deputy Krietemeyer resulted in sore ribs and a scratch on his wrist. Lacey was examined after the incident with Deputy Krietemeyer and, although he complained of pain in his ribs, the nurse observed no bruising, swelling, or other deformity.[3]  (Doc. # 36, Exhibit 3, Health Care Documentation form dated June 17, 2006).  The examining nurse further characterized the scratch on Lacey's

---

[3]      Lacey complains the altercation with Deputy Krietemeyer aggravated a pre-existing rib injury.  As Lacey concedes, he reportedly suffered an injury to his ribs before he was arrested and booked in to the Jail.  Records reflect that Lacey advised officials at the time he arrived at the Jail that he injured his ribs two days prior to his arrest.  (Doc. # 36, Exhibit 3, Jail Medical History and Screening).  In a separate civil action in this district, Lacey complained that he re-injured his ribs when he fell from the top bunk on May 8, 2006.  *See Lacey v. Galveston County Jail Medical Dep't*, Civil No. G-06-0408 (S.D. Tex.).  Lacey has also complained that he re-injured his ribs and hurt his wrist when he fell in the shower on May 31, 2006.  *See Lacey v. Galveston County Jail Maintenance Dep't*, Civil No. G-06-0442 (S.D. Tex.).  The medical records presented in this case show that Lacey suffered minor injuries to his ribs and his wrist prior to his altercation with Deputy Krietemeyer. (Doc. # 36, Exhibit 3, Medical Record relating to Inmate Rodrick Lacey).  To establish a claim for excessive force in this circuit, a plaintiff's alleged injuries must result "directly and only from" the use of force.  *Wells v. Bonner*, 45 F.3d 90, 96 (5th Cir. 1995).  To the extent that Lacey's allegations regarding his injuries represent an exacerbation, if any, of pre-existing conditions, the Fifth Circuit has concluded that these claims do not present an injury of the kind required to make an excessive-force claim.  *See id.*

wrist as "superficial." (*Id.*).  Lacey was treated with an ice pack and Ibuprofen for pain. (*Id.*).

Taking Lacey's allegations as true, and resolving all inferences in his favor, he has demonstrated nothing more than soreness, abrasions, or bruises of the type that would not otherwise force a free world person to seek medical treatment. *See Luong*, 979 F. Supp. at 486.  Accordingly, Lacey has not raised a genuine issue of material fact on whether he suffered a more than *de minimis* physical injury of the kind required to establish an excessive-force claim. *See id.*; *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1999) (holding that a sore, bruised ear lasting for three days was *de minimis* and not sufficient to raise a valid claim for excessive force).  Because Lacey has not alleged or shown that he suffered an actionable injury as a result of the alleged incident with Deputy Krietemeyer, Lacey has failed to demonstrate a valid claim for excessive force and he otherwise fails to establish a constitutional violation.

### B.    Objective Reasonableness

Because Lacey has failed to establish a constitutional violation, the Court need not proceed to the second part of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007).  Nevertheless, Deputy Krietemeyer argues that, even if the force used could be considered excessive, he is entitled to qualified immunity from suit because he acted in good faith and his conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendant's qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the

questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added).  If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341 (1986).  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

The facts alleged in this case fail to show that Deputy Krietemeyer's actions were unreasonable under the circumstances of this case.  As noted above, Lacey admits that he disobeyed repeated orders to stop talking to an inmate from another pod.  In his cross-motion for summary judgment and his motion for judgment in his favor, Lacey complains that Deputy Krietemeyer's use of force was improper and excessive, but he does not dispute that the injury he suffered, if any, was *de minimis* and therefore insufficient to establish a constitutional violation.  (Docs. # 37, # 38).  Lacey's allegations are not sufficient to overcome the defendant's assertion of qualified immunity in this instance.

Where qualified immunity is asserted, Lacey, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendant's actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them.  *See Michalik*, 422 F.3d at 262.  Lacey has

16

presented nothing other than his own self-serving allegations that Deputy Krietemeyer's actions were unjustified.  In light of this record, which shows that Deputy Krietemeyer responded with force after Lacey violated Jail policies and ignored his commands, Lacey's unsupported allegation that Deputy Krietemeyer assaulted him for no reason is not sufficient to meet that burden.  Lacey has failed to raise a genuine issue of material fact on whether Deputy Krietemeyer's actions were not objectively reasonable under the circumstances.  The Court concludes, therefore, that summary judgment on the defendant's assertion of qualified immunity is warranted.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The defendant's motion for summary judgment (Doc. # 31) is **GRANTED**.

2.    The plaintiff's motion for judgment in his favor and his cross-motion for summary judgment (Docs. # 37, # 38) are **DENIED**.

3.    The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on March 5<u>th</u>, 2008.

Nancy F. Atlas
United States District Judge

17